## Layng, Appellant, *v.* The A. French Spring Co., Ltd.

*Limited partnerships—Ultra vires—Purchase of corporation stock.*

A limited partnership under the act of 1874 for the making of springs, has power to purchase, with its surplus, stock of a steel manufacturing corporation, especially when the purchase is made to secure steel for its springs on favorable terms.

Argued Nov. 6, 1891. Appeal, No. 308, Oct. T., 1891, by plaintiff, Frank S. Layng, from decree of C. P. No. 1, Allegheny Co., Sept. T., 1889, No. 110, dismissing bill in equity against The A. French Spring Co., Ltd., and its chairman and board of managers. Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

Bill in equity to set aside the purchase of stock in the Bolton Steel Company.

The case was referred to R. B. Carnahan, as master and examiner; and, upon his death, to Thomas Patterson. From the report of the master, it appeared that the plaintiff was one of the stockholders of The A. French Spring Company, Ltd., a limited partnership under the act of 1874, the business of which, according to its articles of association was "the manufacture of springs of every description." The Bolton Steel Company was originally a corporation under the laws of Ohio, but at the time of the filing of the bill, had been merged into a corporation organized under the laws of Pennsylvania under the name of "The Bolton Iron & Steel Company," the purpose of the corporation, according to its charter, being the "manufacturing iron or steel or both, and of articles of commerce composed of either of these metals exclusively, or in combination with other material or with wood." The character of work chiefly conducted by the Bolton Steel Company at the time of the purchase

of the stock in question was the manufacture of spring steel. The capital stock consisted of 2000 shares of the par value of $100. The purchase was formally reported to the board of managers of The A. French Spring Company, at their quarterly meeting October 15, 1888, and by them approved, the company assuming the purchase and relieving Mr. French from liability thereon.

Other facts appear by the opinion of the Supreme Court.

The master's report was in part as follows:

" There remains then the single question whether the act complained of is ultra vires, or rather an unauthorized diversion of the capital of the defendant company from the purposes marked out in its articles of association. This is the real question in the case.

" It is argued by counsel for plaintiff that the purchase complained of is simply taking a large portion of the assets of the limited partnership and placing them in a corporation where the rule of liability, the management of the business, and the character of the business, are entirely different.

" That the Bolton Iron and Steel Company differs in these respects from the limited partnership must be admitted, but it does not seem to the master that this is the proper test to determine the unauthorized character of the investment.

" There would appear to be two underlying principles applicable to a case of this sort. The first exists for the benefit of creditors, though the shareholder may doubtlessly avail himself of it, and is that the capital of a limited partnership is a trust fund for the benefit of creditors, and cannot be diverted from their reach: Coffin's Appeal, 106 Pa. St. 286. Justice PAX-SON there states the rule as follows: 'It (the capital contributed) is a fund, set apart by the act for the benefit of creditors, and to some extent partakes of the nature of a trust. I do not, of course, mean a technical trust, which would require to be invested and so held, but a trust in the sense that neither the special nor the general partners can lay their hands upon it except for the purposes for which it was created. It may be used in the business, for it was contributed for that purpose, but it cannot be diverted either directly or indirectly by any device whatever.'

" Has there been any violation of this rule by the purchase of

stock complained of ? As the master looks at it, there has not, for two reasons: 1st. The investment here is of a portion of the surplus, about one fourth, and the capital is still intact and answerable to creditors. 2d. The stock in the Bolton Iron and Steel Company represents the money expended, and is an available asset of the defendant company. The creditors of that company are not turned over to extricate its capital from a corporation which has appropriated it. The limited company is untouched, and the only difference is that in the surplus account there is 501 shares of stock in the Bolton Company, in place of $50,000, just as there might be a government or railroad bond in place of a corresponding amount of cash.

" In the master's opinion, there has been no violation of the trust pointed out in the remarks of Justice PAXSON, above cited.

" The second rule exists for the benefit of the stockholders directly, and is that the enterprise must be conducted within the limits marked out at the time the capital was invested in the joint enterprise. A good example of this rule is the case of Asbury R. & I. Co. v. Riche, 7 E. & I. Ap. 672; though the cases are numerous, and there is really no dispute as to the statement of the principle.

" In determining whether or not the purchase complained of is an infraction of this rule, we must look to the entire scope of the enterprise, and give to the directors all incidental powers proper for carrying the main purpose into effect.

" ' A corporation may transact all such matters as, being auxiliary to its primary business or main enterprise, are transacted by ordinary individuals under similar circumstances : ' Green's Brice's Ultra Vires, p. 65 ; Watts's Ap., 78 Pa. 370.

" The primary object of The A. French Spring Company, Limited, was the manufacture of railway springs. For this purpose, they were obliged to use large quantities of steel. Prior to this purchase, they had bought their steel in the open market. The association of steel makers having forced up the price of this article, they found themselves at a serious disadvantage as against competitors who made their own steel. It can hardly be questioned that if, at this time, the defendant company had put up a plant for the manufacture of steel, the act would have been sustained as within the sound discretion

of the board of managers. The use of steel is a necessary link in the production of the finished article. It is in the discretion of the managers at what link in the chain they begin their operations. It would seem impossible for a court of equity to draw the line at any one step in the process, and forbid the company from taking up its work of manufacture beyond that point. As the master views it, the company have the right to start with the ore in the hills, if in the judgment of the managers they can reach more advantageous results in this way, than by taking the partly finished product from the hands of other manufacturers.

" The question then arises, assuming this view to be correct, can the defendant company associate itself with others, by means of the purchase of stock in a corporation, in order to compass any of its legitimate ends ? This question is by no means free from perplexity, but the weight of authority seems to be that they can make such purchase, provided the corporation into which they buy is conducted for the same general purpose as their own.

" Cook on Stockholders thus states the rule, sec. 63 : ' It is not equally clear that one private corporation may subscribe for stock in another such corporation. On the contrary, such subscriptions are ultra vires and void, unless clearly within the ordinary objects and business of the subscribing corporation.'

" The tendency in Pennsylvania seems to be to sustain a bona fide purchase of this sort, where it is for the purpose of carrying out the main object of the purchasing corporation.

" In Watts's Appeal, supra, the charter of the Improvement Company authorized them ' to aid in the development of the minerals and other materials, the use and transportation of them to market, and promote the clearing and settlement of the country . . . . to employ their capital in the construction of such railways, not exceeding twenty miles in length, as may be necessary from such mines to intersect the Sunbury and Erie and the Allegheny Valley Railroad . . . . to create a capital stock of $100,000, for the purposes specified in this section.'

" Instead of building a branch road on their own account, the directors subscribed $162,000 to the stock of the Sunbury and Erie Railroad, in consideration of which that road adopted a route which carried it through the heart of the Improvement

Company's lands. On a bill filed setting forth that the subscription was contrary to law, the court say: 'That they had the power to build both common roads and railroads, or to aid others to a reasonable extent in so doing, is beyond doubt. Under such circumstances, their subscription, though larger than was warranted, looks to me more like a mistake in judgment than a willful perversion of power.'

"In Wright v. Pipe Line, 101 Pa. 204, the subscription for stock was expressly prohibited by the general act under which the company was incorporated, and it was distinctly upon the terms of the act that this portion of the decision is based.

"The corporation act of 1874, sec. 38, relative to iron and steel companies, gives them the right to purchase and hold stock in any other corporation of a similar nature.

"The limited partnership act of June 2, 1874, is silent on the subject, but the 7th section contains a provision relative to the loan of its credit, name, or capital 'to any other person or association.'

"It would seem clearly that there is then no statutory prohibition of an investment of this character, but that on the contrary, so far as a legislative intent can be inferred, it is favorable to the right claimed.

"The question here raised was considered in almost the same aspect, and the view above indicated was adopted by Judge CHURCH, of the common pleas of Crawford county, in the case of Patterson v. The Tide Water Pipe Co., 12 W. N. C. 452. After discussing the question of the character of limited partnerships, and holding that associations of this sort are much more nearly allied to corporations than to ordinary partnerships, Judge CHURCH proceeds:

"'If the association has the right to refine oil, they have a right to acquire real and personal property for this purpose, and to use their capital and credit in such acquisition and business. If they have a right to use their capital or credit for this purpose, it would certainly seem they had a right to use a portion of their capital therefor, and to join such portion to the capital or credit of some other person or organization, if the capital required in the venture were too large for the sole and individual capacity of the association. Moreover, it is in evidence, and we unhesitatingly believe it, that the business of

these refining companies has proven and is proving profitable, that their establishment was wise, and, indeed, a necessity. I do not think, therefore, that the taking stock by the managers in these refining companies was a diversion of the association funds from their legitimate purposes, nor do I believe the act to be ultra vires.'

" As it seems to the master, this view is most reasonable, and most consistent with a sound policy which shall encourage and protect the existence of these artificial bodies.

" The purchase in the case before us appears to have been made with care and discretion and after canvassing all other expedients. All precautions necessary to protect the company and its shareholders were taken; and the result appears to have justified the judgment of the managers. To hold the contrary rule would be to very greatly, and as it seems to the master unnecessarily, restrict and hamper the successful business management of associations of this nature.

" Upon these considerations, the master concludes that the purchase by The A. French Spring Company, Limited, of the stock in the Bolton Iron and Steel Company, was not ultra vires or unauthorized, but a matter within the sound discretion of the board of managers. He therefore recommends that the bill be dismissed at the costs of plaintiff."

Exceptions filed to the report of the master were dismissed by the court below and a decree entered dismissing the plaintiff's bill and putting the costs, including the master's fee, upon the plaintiff.

*Errors assigned* were (1) the entering of the decree, quoting it; (2) as stated in the opinion of the Supreme Court.

*D. T. Watson*, for appellant.—The contract was ultra vires: Attorney General v. Great Northern Railway Co., 6 Jurist, N. S. 1007, 1008; Robert's Ap., 92 Pa. 422; Clay v. Carter, 16 W. N. C. 385; McMillan v. Carson Hill Mining Co., 12 Phila. 404; Watt's Ap., 78 Pa. 392; Green's Brice's Ultra Vires, pp. 540, 541.

The A. French Spring Company, Lt'd, owning the majority of the stock of the Bolton Steel Company, could not purchase from the Steel Company on special terms: Rice's Ap., 79 Pa. 204.

Under the limited partnership act, if the company engaged in other business than that specified in its articles, the members would become liable as general partners: Elliott v. Himrod, 108 Pa. 569.

*A. M. Brown,* with him *P. C. Knox,* for appellees.—A company limited under the act of 1874 is a corporation or quasi corporation: Com. v. Sandy Lick Co., 40 Leg. Int. 272; Patterson v. Tide Water Pipe Co., 12 W. N. C. 452; Stevens v. Phila. Base Ball Club, Lt'd, 28 W. N. C. 37; Oak Ridge Coal Co. v. Rogers, 108 Pa. 147; acts of June 7, 1879, §§ 5 and 6, and June 8, 1891, § 21.

The purchase was not ultra vires: Morawetz on Corp., §§ 320, 362, 364 and 365; Green's Brice's Ultra Vires, 65, 86, 87, n. A; Lyde v. Eastern Bengal Ry. Co., 36 Beav. 16, 17; Taunton v. Royal Ins. Co., 2 H. & M. 135; R. R. Co. v. Howard, 7 Wall. 392; Patterson v. Tide Water Pipe Co., Lt'd, 12 W. N. C. 452; Booth v. Robinson, 55 Md. 419; Elysville Mfg. Co. v. Okisko Co., 1 Md. (Ch. Dec.) 392; s. c., 5 Md. 152; Hill v. Nisbet, 100 Ind. 341, 349; Ryan v. Leavenworth, 21 Kas. 365; Evans v. Bailey, 66 Cal. 112; Green Bay etc. R. R. Co. v. Union Steamboat Co., 107 U. S. 98, 100; Atty. Gen. v. Great Eastern Ry. Co., 5 Ap. Cas. 473 (at 478); Morville v. Amer. Tract Society, 123 Mass. 129 (at 136); Chester Glass Co. v. Dewey, 16 Mass. 94; Searight v. Payne, 6 Lea (Tenn.), 283.

OPINION BY MR. JUSTICE STERRETT, May 23, 1892:

Both specifications are of the most general character. The first complains of the decree dismissing plaintiff's bill. The second charges error in not granting the relief prayed for, viz., a decree restraining the defendants, managers of "The A. French Spring Co., Limited," from any further appropriation of said company's money to the payment of the notes given for purchase of the interest in the Bolton Iron and Steel Co., and ordering said managers to account, and pay back into defendant company's treasury all sums of money paid out by them for the purchase of said interest.

Neither of the specifications alleges any error in the learned master's findings of fact, nor in the approval of those findings by the court. The facts embodied in his report must therefore be accepted as correct. It is unnecessary to notice them in de-

tail. Brief reference to a few of the more important will be sufficient.

One of the facts thus established is, that the purchase of 501 shares in the Bolton Iron and Steel Co. was made, on or about Sept. 1, 1888, by Aaron French, on behalf of the defendant company. That purchase was made in conjunction with a similar one made by J. J. Young, whereby the two purchasers secured a controlling interest in the Bolton Iron and Steel Co. The purchase was made in good faith, for the purpose of securing protection for the defendant company against the combination or association of steel makers, which operated against the company by requiring them to pay more for their steel than it cost other competitors who manufactured their own steel supply.

The consideration of the purchase thus made by Mr. French was $50,100, of which $12,600 was paid in cash, and the residue in three notes of $12,500 each, in one, two and three years from Sept. 1, 1888. Only one of the notes was outstanding and unpaid when the hearing before the master was concluded. The payments were made out of the general surplus assets of the defendant company, consisting of money, etc., which, prior to that time, had been credited to the profit and loss account. In the language of one of the witnesses, " the surplus account consisted of the amount of money which, prior to that date, had been credited to the profit and loss account, plus the amount that had been made during the year up to that time. . . . In other words, it was the balance of the assets of the concern after deducting the capital stock, bills payable and all other liabilities."

It thus appears that the investment complained of did not, in any manner, impair the fixed capital of the defendant company. The purchase of the 501 shares in question required only a portion of its then surplus profits. The integrity of the transaction, in a business point of view, is unimpeached.

The investment was made in good faith, and, so far as appears, for the sole purpose of advancing the pecuniary interests of defendant company. The plaintiff appears to think it will have a different effect, but in that opinion he evidently differs in judgment with the managers and other stockholders.

It was alleged by defendants that plaintiff knew and ac-

quiesced in the purchase of the stock in question for such a length of time as should estop him from now questioning either its regularity or legality; but the learned master, upon full consideration of the evidence on that subject, found as a fact that he was not fully informed as to the purchase until April, 1889; and, after being so informed, he protested against it, and filed his bill without unnecessary delay. He is therefore in a position to question the legality of the investment, on the ground that it was ultra vires. In view of the facts found by the master, and approved by the court, that appears to be the only ground on which there is any room for even a doubt. It is equally clear that the purchase was carefully made, in the exercise of a sound business discretion, and after full consideration of its propriety and expediency. All necessary precautions for the protection of the defendant company and its stockholders were taken; and, as the master found, "the result appears to have justified the judgment of the managers."

To hold that such an investment of surplus earnings, made under the circumstances, and for the purpose shown in this case, is ultra vires, would greatly and unnecessarily cripple and interfere with the successful management of limited partnership associations. There appears to be nothing in the law of their being that requires us to do so. Considered either as a judicious investment of surplus earnings, or as the acquisition of an interest in an iron and steel company, from which supplies of those materials may be procured on more favorable terms than elsewhere, or as both combined, the transaction complained of is not in conflict with defendant company's articles of association. One of these provides that the business to be conducted by the company shall be, as its name indicates, "the manufacture of springs of every description." There appears to be nothing in any of the articles that, in express terms, or by necessary implication, prohibits the company from preparing or manufacturing its own supplies of steel, etc., or otherwise procuring the same.

After considering the facts, in connection with the authorities bearing on the subject, the master reached the conclusion that the purchase in question was not ultra vires, but, on the contrary, it was a matter within the sound discretion of the board of managers. Without reviewing the authorities cited

by him in support of this conclusion or further consideration of the facts, we think the master was right in recommending the dismissal of plaintiff's bill, and that the court committed no error in decreeing accordingly.

Decree affirmed and appeal dismissed, with costs to be paid by appellant.